

U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2021 SEP 30 P 5: 09

CAROL L. MICHEL
CLERK

# FELONY

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

### INDICTMENT FOR VIOLATING THE ACT TO
### PREVENT POLLUTION FROM SHIPS, THE PORTS AND
### WATERWAYS SAFETY ACT, AND OBSTRUCTION OF JUSTICE



**21-0126**
**SECT. SMAG. 4**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.:** |
| | | |
| **v.** | * | **SECTION:** |
| | | |
| **EMPIRE BULKERS LTD** | * | **VIOLATIONS: 33 U.S.C. § 1908** |
| **JOANNA MARITIME LIMITED** | | **46 U.S.C. § 70036** |
| **WARLITO TAN** | * | **18 U.S.C. § 2(b)** |
| | | **18 U.S.C. § 1505** |
| | * | **18 U.S.C. § 1519** |
| | | |
| | * | |
| | | |
| | * | |
| | | |
| * | * | * |

The Grand Jury charges that:

## COUNT 1
### (Act to Prevent Pollution from Ships)

**A.    AT ALL TIMES MATERIAL HEREIN:**

### The Defendants

1.    Defendant **EMPIRE BULKERS LTD ("EMPIRE BULKERS")** was a Marshall

Islands registered company with headquarters at 88 Vouliagmenis Avenue Elliniko, 16777,

Greece. **EMPIRE BULKERS** was part of a group of companies that provide commercial and

Fee
Process
X  Dktd
   CtRmDep
   Doc. No.

technical management to a fleet of ocean-going vessels that it owned directly and indirectly through its subsidiaries. **EMPIRE BULKERS** managed and operated the *MV JOANNA*, a 23,494 gross-ton, ocean-going ship registered in the Marshall Island with the International Maritime Organization Number 9460277, and had also managed the ship previously when it was known as the *MV Eleni.* As part of its management responsibilities, **EMPIRE BULKERS** acted directly, and indirectly through an affiliated group of individuals and companies, was agent and ship manager of and on behalf of the ship's registered owner, and employed the crew members aboard the *MV JOANNA*. The crew of the *MV JOANNA* acted as agents and employees of, and for the intended benefit, at least in part, of **EMPIRE BULKERS**.

2.      Defendant **JOANNA MARITIME LIMITED ("JOANNA MARITIME")**, a Marshall Islands company doing business by and through **EMPIRE BULKERS** at 88 Vouliagmenis Avenue Elliniko, 16777, Greece, was the listed owner of the *MV JOANNA*. Defendant **JOANNA MARITIME** did business by and through its agent **EMPIRE BULKERS**, and had no employees or offices other than those at **EMPIRE BULKERS** and its affiliated group of companies and personnel. The crew of the *MV JOANNA* acted as agents of, and for the intended benefit, at least in part, of **JOANNA MARITIME**.

3.      Defendant **WARLITO TAN (TAN)**, a citizen of the Republic of the Philippines, was the Chief Engineer of the *MV JOANNA* and an agent and employee of **EMPIRE BULKERS** and **JOANNA MARITIME**.

### The *MV JOANNA*

4.      The *MV JOANNA* transported commercial cargo internationally and into and out of the United States including the port of New Orleans, Louisiana. The vessel had a crew including, at various times, a Master, Chief Engineer, Second Engineer, Third Engineer, Electrician, Oiler,

and Wiper. The crew carried out activities on the vessel to ensure the vessel was able to operate and carry cargo to various destinations. The Master was overall in charge of the vessel and responsible for numerous documents, including the Oil Record Book ("ORB"). The Master also had a responsibility to report to the United States Coast Guard ("U.S. Coast Guard") about any dangerous or hazardous conditions on the vessel prior to its arrival in a United States port. The Chief Engineer was in charge of the engineering department, supervising engineering personnel and responsible for the proper disposal of oily waste generated in the engine room. The Chief Engineer was a person in charge of operations in the engine room and thus required to make appropriate entries in the ORB without delay.

5.     On vessels like the *MV JOANNA*, oily engine room waste, including oily mixtures, sludge, waste oil, and machinery space bilge water, is generated on a regular basis. Sludge is the by-product of the purification of the lubrication and fuel oils that are used in the vessel's electrical generation machinery and main propulsion engine. Waste oil is the result of oil leaks from various machinery as well as from replacing lubrication oils in the machinery. Oily mixture means a mixture, in any form, with oil content. Machinery space bilge water refers to oil and water that drips and leaks from machinery and mechanical systems and accumulates in the bilge, which is the bottom-most portion of the engine room. Machinery space bilge water is also known as "oily bilge water" and is defined in 33 C.F.R. § 151.05 as "water which may be contaminated by oil resulting from things such as leakage or maintenance work in machinery spaces. Any liquid entering the bilge system including bilge wells, bilge piping, tank tops or bilge holding tanks is considered oily bilge water."

6.     Oily mixtures, sludge, and waste oil can only be disposed of in two manners: (1) incineration in the vessel's onboard incinerator; or (2) disposal to a barge or other shore-based

disposal facility. Machinery space bilge water can also be disposed of in only two manners: (1) it may be processed through the onboard Oily Water Separator ("OWS") and Oil Content Monitor ("OCM") resulting in an overboard discharge of water with no more than 15 parts per million ("ppm") of oil, or (2) it may be disposed of to a barge or other shore-based disposal facility. Prior to processing or disposal, machinery space bilge water must be transferred to, and stored in, the vessel's bilge water holding tank. In order to reduce the overall volume of oily wastes, it is permissible for oily waste to be heated to facilitate the evaporation of water from the waste, which is a type of disposal.

7.     All overboard discharges, disposals and transfers of oily mixtures, sludge, waste oil, or bilge water, whether through incineration, use of the OWS, or transfer to a shore-based facility, are required to be recorded in the vessel's ORB by the person or persons in charge of those operations.  Entries and signatures contained in the ORB indicate that the person(s) entering and signing the entries performed the operation or had first-hand knowledge of the operation.

8.     The *MV JOANNA* was also outfitted with a fuel-oil heater system. On commercial vessels such as the *MV JOANNA*, fuel-oil is heated within a pressurized system before it is delivered to the main engine. These systems are outfitted with pressure-relief valves in order to prevent over pressurization of the fuel-oil heater vessel and thereby prevent the possibility of an explosion of the fuel-oil heater vessel which could then result in damage to the vessel, its crew and the environment.

## Legal Framework

9.     The United States is part of an international regime that regulates the discharge of oil from vessels at sea: the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (together "MARPOL"). MARPOL is implemented in the United

States by the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. §§ 1901 et seq. APPS made it a crime for any person to knowingly violate MARPOL, APPS, or regulations promulgated under APPS. 33 U.S.C. § 1908. These regulations apply to all commercial vessels operating in the navigable waters of the United States or while in a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States. 33 U.S.C. § 1902(a)(1)(3).

10.     MARPOL Annex I ("Regulations for the Prevention of Pollution by Oil") established international standards governing the treatment and disposal of oily mixtures generated from the machinery spaces of a vessel. Under MARPOL, machinery space bilge water may be discharged overboard into the ocean only if it does not exceed 15 ppm of oil and the ship has in operation required pollution prevention equipment. This equipment includes: an oil filter, known as an OWS; an alarm, known as an OCM; and an automatic stopping device, known as a Three-Way Valve.

11.     Consistent with the requirements contained in MARPOL, APPS regulations require that vessels such as the *MV JOANNA* maintain a record known as an ORB in which the disposal, transfer, and discharge overboard of sludge, oil residue, oily mixtures, and machinery space bilge water must be recorded. 33 C.F.R. § 151.25(d). Discharges from the machinery spaces must be fully and accurately recorded in the ORB without delay by the person or persons in charge of the operations. 33 C.F.R. § 151.25(d) and (h). The ORB also must record any emergency, accidental, or other exceptional discharges of oil or oily mixtures, including a statement of the circumstances, and reasons for, the discharge. 33 C.F.R. § 151.25(g). The ORB must be maintained aboard the vessel for not less than three years, and be readily available for inspection at all reasonable times. MARPOL Annex I, regulation 17(6); 33 C.F.R. § 151.25(i). According to 33 C.F.R. § 151.25(j),

"[t]he master or other person having charge of a ship required to keep an [ORB] shall be responsible for the maintenance of such record." Other members of the ship's crew, including Chief Engineers, may aid and abet and cause the vessel master's failure to maintain an accurate ORB under 18 U.S.C. § 2(b), and therefore be charged as a principal.

12.     The U.S. Congress enacted the Ports and Waterways Safety Act ("PWSA"), 46 U.S.C. §§ 70011, et seq., in recognition of the fact that increased supervision of vessel and port operations was necessary to reduce the possibility of vessel or cargo loss, or damage to life, property, or the marine environment. 33 U.S.C. § 1221(c)(l). Pursuant to 46 U.S.C. § 70036(b)(l), a person violates the PWSA if the person willfully and knowingly violates a regulation promulgated under the PWSA. PWSA regulations govern a wide variety of vessel operations. The owner, agent, master, operator, or person in charge of a vessel must immediately notify the nearest U.S. Coast Guard Sector office whenever there is a hazardous condition, either aboard a vessel or caused by the vessel or its operation. 33 C.F.R. § 160.216. "Hazardous condition" is defined as "any condition that may adversely affect the safety of any vessel, bridge, structure, or shore area or the environmental quality of any port, harbor, or navigable waterway of the United States. It may, but need not, involve collision, allision, fire, explosion, grounding, leaking, damage, injury or illness of a person aboard, or manning shortage." 33 C.F.R. § 160.202. The requirement to notify the U.S. Coast Guard of hazardous conditions is applicable to foreign vessels bound for or departing from ports or places in the United States. 33 C.F.R. § 160.203(a)(2). Other members of the ship's crew, including Chief Engineers, may aid and abet and cause the vessel master's failure to report a hazardous condition under 18 U.S.C. § 2(b), and therefore be charged as a principal.

13.     The U.S. Coast Guard, an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under 14 U.S.C.

6

§ 522(a) to board vessels and conduct inspections and investigations of potential violations and to determine compliance with MARPOL, APPS, and related regulations. In conducting inspections, U.S. Coast Guard personnel rely on the statements of the vessel's crew and documents, including statements and information contained in ORBs. The U.S. Coast Guard is specifically authorized to examine a vessel and it's ORBs for compliance with MARPOL and APPS. 33 U.S.C. § 1907(d); 33 C.F.R. § 151.23(a)(3).

**B.**    **THE OFFENSE CONDUCT:**

On or about March 11, 2021, at the Port of New Orleans, and within the Eastern District of Louisiana, and elsewhere, Defendants,

**EMPIRE BULKERS** and
**JOANNA MARITIME**,

acting through their agents and employees who were acting within the scope of their agency and employment and at least in part for the intended benefit of **EMPIRE BULKERS** and **JOANNA MARITIME** and Defendant,

**WARLITO TAN**

did knowingly fail and cause the failure to maintain an accurate ORB for the *MV JOANNA*, in which quantities of oil residue, oily mixtures, and machinery space bilge water, and the discharge and disposal of these substances, were fully and accurately recorded, as required. Specifically, during the period of on or about October 25, 2020, through on or about March 11, 2021, the Defendants falsely recorded and caused to be falsely recorded that discharges of oily bilge water had been made through a properly functioning OWS and OCM when they had not, and (2) failed to record exceptional discharges of oily bilge water made without the use of a properly functioning OWS and OCM, in violation of Title 33, United States Code, Section 1908(a), Title 18, United States Code, Section 2(b), and Title 33, Code of Federal Regulations, Section 151.25.

7

## COUNT 2
### (Obstruction of Agency Proceeding)

**A.     AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in paragraphs 1 through 13 of Count 1 are realleged and incorporated by reference as though fully set forth herein.

**B.     THE OFFENSE CONDUCT:**

On or about March 11, 2021, at the Port of New Orleans, and within the Eastern District of Louisiana, and elsewhere, Defendants,

**EMPIRE BULKERS** and
**JOANNA MARITIME**,

acting through their agents and employees who were acting within the scope of their agency and employment and at least in part for the intended benefit of **EMPIRE BULKERS** and **JOANNA MARITIME**, and the Defendant,

**WARLITO TAN**

did corruptly influence, obstruct and impede, and caused to corruptly influence, obstruct, and impede the due and proper administration of the law under a pending proceeding by the U.S. Coast Guard, an agency within the Department of Homeland Security. Specifically, on or about March 11, 2021, during a U.S. Coast Guard inspection of the *MV JOANNA* to determine the vessel's compliance with MARPOL and U.S. law, the Defendants: (1) made, used and presented and caused the presentation of an ORB that falsely reported that required pollution prevention equipment had been used properly when discharging oily bilge water; (2) made, used and presented and caused the presentation of an ORB that contained co-signed entries of an engineer vouching for engine room operations that he did not perform and of which he did not have personal knowledge, including overboard discharge entries;  (3) concealed and failed to disclose and caused the concealment and failure to disclose a broken component of the ship's incinerator and its

8

inoperability; and (d) concealed and failed to report and caused the concealment and failure to report a hazardous condition concerning the disabling of the fuel oil heaters pressure relief valves, in violation of Title 18, United States Code, Section 1505 and Title 18, United States Code, Section 2(b).

### COUNT 3
### (Obstruction of Justice)

A.   **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in paragraphs 1 through 13 of Count 1 are realleged and incorporated by reference as if fully set forth herein.

B.   **OFFENSE CONDUCT**:

On or about March 11, 2021, at the Port of New Orleans, and within the Eastern District of Louisiana, and elsewhere, Defendants,

**EMPIRE BULKERS** and
**JOANNA MARITIME**,

acting through their agents and employees who were acting within the scope of their agency and employment and at least in part for the intended benefit of **EMPIRE BULKERS** and **JOANNA MARITIME**, and the Defendant,

**WARLITO TAN**

did knowingly conceal, cover up, and falsify, and make false entries and omissions in a record and document, that is, a false, fictitious, and misleading ORB for the *MV JOANNA* that concealed the disposal and discharge of oil residue, oily mixtures, and machinery space bilge water, and contained co-signed entries of a subordinate engineer vouching for engine room operations that he did not perform and of which he did not have personal knowledge, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the U.S. Coast Guard and the

Department of Homeland Security, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with MARPOL and United States law, in violation of Title 18, United States Code, Section 1519, and Title 18, United States Code, Section 2(b).

### COUNT 4
#### (Ports and Waterways Safety Act)

**A.     AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in paragraphs 1 through 13 of Count 1 are realleged and incorporated by reference as though fully set forth herein.

**B.     THE OFFENSE CONDUCT:**

Between on or about March 6, 2021, and on or about March 11, 2021, at the Port of New Orleans, and within the Eastern District of Louisiana, and elsewhere, Defendants,

**EMPIRE BULKERS** and
**JOANNA MARITIME**,

acting through their agents and employees who were acting within the scope of their agency and employment and at least in part for the intended benefit of **EMPIRE BULKERS** and **JOANNA MARITIME**, and the Defendant,

**WARLITO TAN**

knowingly and willfully failed and caused the failure to immediately notify the nearest U.S. Coast Guard Sector that a hazardous condition existed aboard the *MV JOANNA*. Specifically, while the *MV JOANNA* was in the Port of New Orleans and Mississippi River, Defendants were aware of a hazardous condition aboard the vessel that may have adversely affected the safety of any vessel, bridge, structure, and shore area and the environmental quality of any port, harbor, and navigable waterway of the United States, specifically that: (1) the discharge line downstream from the fuel-oil heaters and pressure relief valves was disconnected and crimped closed causing both pressure

10

relief valves coming off the fuel-oil heaters to be disabled and inoperable; (2) a pressure relief valve on a fuel oil heater was not working properly; and (3) there was an active leak of fuel-oil in the Purifier Room emanating from the fuel-oil heaters and pressure relief valves in violation of Title 46, United States Code, Section 70036(b)(1), Title 33, Code of Federal Regulations, Sections 160.202, 203(a)(2), and 216, and Title 18, United States Code, Section 2(b).

A TRUE BILL:



DUANE A. EVANS
United States Attorney

G. DALL KAMMER
Assistant United States Attorney
Louisiana Bar Roll No. 26948

RICHARD UDELL
Senior Litigation Counsel
Environmental Crimes Section

KENNETH E. NELSON
Senior Trial Attorney
Environmental Crimes Section

New Orleans, Louisiana
September 30, 2021

11

FORM OBD-34

No._____

# UNITED STATES DISTRICT COURT

__Eastern__  District of  __Louisiana__

__Criminal__  Division

## THE UNITED STATES OF AMERICA

vs.

EMPIRE BULKERS LTD.

JOANNA MARITIME LIMITED

WARLITO TAN

### INDICTMENT

FOR VIOLATING THE ACT TO PREVENT
POLLUTION FROM SHIPS, THE PORTS AND
WATERWAY SAFETY ACT, AND OBSTRUCTION OF
JUSTICE

VIOLATION: 33 U.S.C. § 1908
46 U.S.C. § 70036
18 U.S.C. § 2(b)
18 U.S.C. § 1505
18 U.S.C. § 1519

A true bill

_____

Filed in open court this _____ day of
_____ A.D. 2021.

_____
Clerk

Bail, $ _____

G. DALL KAMMER
Assistant United States Attorney