UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION NO. 21-126 |
| | * | |
| VERSUS | * | SECTION: "S"(1) |
| | * | |
| EMPIRE BULKERS LTD, JOANNA | * | JUDGE MARY ANN VIAL LEMMON |
| MARITIME LIMITED, AND WARLITO | * | |
| TAN | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is the Motion of witnesses Haldun Akkaya, Manuel Baliad II, Bienvenido Cabanayan Jr., Gerone Bernabe, Nimuel Nalogon, and Louie Gonzaga (the "Witnesses") to be released from complying with the trial subpoenas issued in October 2021. (Rec. Doc. 128). Because the court finds that under the circumstances, the subpoenas are unreasonable and oppressive, the Motion is GRANTED IN PART, and DENIED IN PART, as discussed below. The trial subpoenas shall be modified as further provided herein.

Background

This is a criminal matter concerning alleged violations of the Act to Prevent Pollution from Ships and the Ports and Waterways Safety Act and for obstruction of justice. Empire Bulkers Limited (the manager and operator of the MV JOANNA), Joanna Maritime Limited (the owner of the MV JOANNA and allegedly doing business through Empire Bulkers), and Warlito Tan (the Chief Engineer of the MV JOANNA during the relevant period) are named as defendants. The Witnesses were other crew members on the MV JOANNA during the relevant period.

Although the indictment here was issued in October 2021, the defendants and the witnesses have been involved with these proceedings since March 2021, when the United States Coast Guard began its investigation of the MV JOANNA while it was in port in the United States. Material

1

Witness Warrants were issued for the Witnesses as well as defendant Tan, who was only a witness at the time. None of them are citizens of the United States and all work as seafarers. The government feared it would lose the ability to present their testimony to the grand jury and, ultimately, at trial. Thus, the court required the Witnesses and Tan to remain in the United States[1] throughout the grand jury proceedings—for which they possessed material testimony—and until after their Rule 15 depositions were completed.[2] Although it was originally anticipated this would take two to three months, it ended up taking much longer.

Several factors contributed to the delay. There was difficulty obtaining a quorum of grand jurors during the COVID 19 pandemic, there was difficulty obtaining documents and information due to resistance from the defendants, and Hurricane Ida caused disruptions in the government's preparation of its case and the grand jury's ability to meet. The court monitored the progress of the proceedings in bi-weekly status conferences.[3] The Witnesses and Tan repeatedly sought to be released from the Material Witness Warrants. At the government's insistence, the court rejected the idea of releasing the witnesses after pre-indictment depositions. Without the indictment, the defendants and the charges against them would not be identified, making it impossible for the defendants to meaningfully cross examine the witnesses, thereby precluding the government's ability to use the testimony at trial if necessary.[4]

During the course of the proceedings, Empire Bulkers and Joanna Maritime paid for the hotel, salary, and per diem of the Witnesses and Tan pursuant to a security agreement they had

---

[1] Captain Akkaya stayed with family in Boston. The remaining witnesses were required to remain in the Eastern District of Louisiana.

[2] Tan, who ended up being a defendant, and Gonzaga were not deposed.

[3] For additional background regarding the proceedings related to the witnesses' initial detention, *see In re JOANNA MV*, 21-mc-592, ECF No. 78 (E.D. La. June 18, 2021); *In re JOANNA MV*, 21-mc-592, ECF No. 108 (E.D. La. July 16, 2021); *In re JOANNA MV*, 21-mc-592, ECF No. 145 (E.D. La. Sept. 10, 2021).

[4] As discussed further below, to use prior testimony in lieu of live testimony against a defendant at trial, the witness must be unavailable and the defendant must have had a meaningful opportunity to cross examine the witness. See Fed. R. Evid. 804(b).

been required to sign as owner and operator in order to release the MV JOANNA from the Coast Guard's custody. Yet for nearly seven months, the Witnesses and Tan were required to stay in a foreign country, during the COVID-19 pandemic, without the ability to be with their families[5] or to engage in productive work, and without any real clarity as to when they would be released. They presented declarations to the court regarding the toll the experience was taking on their emotional and physical well-being. There is no question that they endured a significant hardship.

The indictment was returned on September 30, 2021, and all of the Witnesses except Gonzaga were deposed pursuant to Federal Rule of Criminal Procedure 15 in early October. The Witnesses and the Defendants requested that the depositions be held in Houston where the Witnesses had been residing after evacuating this district in the aftermath of Hurricane Ida. However, the court required that the depositions be conducted in the courthouse in the Eastern District of Louisiana. A primary concern of the court was that the depositions not be derailed by gamesmanship or misconduct by counsel. *In re JOANNA MV*, 21-mc-592, ECF No. 175, at 6 (E.D. La. Oct. 6, 2021). The court noted that with the parties in the undersigned's courtroom, "the court will have the opportunity to quickly step in if needed." Id.  Indeed, the government argued that one of the benefits of conducting the depositions here was that "the Court will be available should any procedural or evidentiary disputes arise that cannot be resolved, reserved or otherwise preserved by counsel." Gov't Motion to Return Material Witnesses to the District, *In re JOANNA MV*, 21-mc-592, ECF No. 148, at 3 (E.D. La. Oct. 6, 2021). During the week of depositions, no party called on the court for assistance in curbing inappropriate behavior.

On October 13, 2021, the court issued trial subpoenas to the Witnesses as a condition of discharging the Material Witness Warrants under which they had been required to remain in the

---

[5] Two of the crewmembers experienced deaths in the family during the proceedings and were allowed to return to the Philippines to attend the funerals, returning thereafter to the Eastern District of Louisiana after several weeks abroad.

United States. Each Witness was asked to verify his receipt of the trial subpoena, which called on them to return to the United States for trial on December 13, 2021. Each Witness agreed to return to testify at trial. Each Witness agreed to return even if the trial date was reset and confirmed their understanding that the same subpoena would bind them as to the new date. Counsel for the Witnesses asked that an exception for compliance with the subpoenas be made in case the Witnesses were at sea. The government opposed. The court found that there was no agreement and that the issue did not need to be resolved at the time. The government asked that the Witnesses be instructed that they must advise their counsel, Mr. Merrill, if they signed a contract to go to sea and that Mr. Merrill be instructed "to advise us in advance." Mr. Merrill did not object, and the court instructed the witnesses to alert Mr. Merrill of the details of any contract signed to go to sea.

Defendants moved to continue the trial in November and it was reset for February 7, 2022. The government moved to continue the trial in January, and the trial was reset for May 23, 2022. In March 2022, the government contacted Mr. Merrill and asked him to get in touch with the victim witness unit at the U.S. Attorney's Office to arrange for travel for the Witnesses to this district for trial. Mr. Merrill responded that Baliad, Cabanayan, and Bernabe were presently at sea, Gonzaga was planning on leaving the prior month, and that counsel was following up with Akkaya and Nalogon. The present dispute ensued.

The Witnesses move to be released from the trial subpoenas. They argue that returning to trial will be extremely difficult given their work at sea and the risk of international travel during a global pandemic. They submit that their testimony is unnecessary because they have already provided it pursuant to Rule 15. All three defendants consent to release the Witnesses and agree to the use of the deposition testimony in lieu of their live testimony. The government opposes, insisting that live testimony is preferred.

Law and Analysis

### 1. Use of Depositions at Trial

The issue of whether the depositions are admissible at trial is not before the court and will ultimately be a question for the District Court to decide. Nonetheless, the court briefly summarizes the applicable law to the extent it bears on whether the witnesses should be released from the trial subpoenas.

As the government points out, "our common law heritage has always favored the presentation of live testimony over the presentation of hearsay testimony by the out-of-court declarant." United States v. Mathis, 559 F.2d 294, 299 (5th Cir. 1977). "The jury's observation of the demeanor of the witness and the effectiveness of cross-examination in the discovery of the truth are the traditional reasons for the preference even though the out-of-court statement had been given under oath." Id. Indeed, "the use at a trial of recorded testimony of an available witness has consistently been held to deny the Sixth Amendment right of confrontation." United States v. Edwards, 469 F.2d 1362, 1368 (5th Cir. 1972).

But as the government concedes, there are exceptions to this rule. Under Federal Rule of Evidence 804, former deposition testimony of a witness is admissible if the witness is unavailable and is offered against a party who had an opportunity and similar motive to develop the testimony. Fed. R. Evid. 804(b). Rule 804(a) provides that a declarant is unavailable if the declarant "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance." Id. 804(a).[6] In the Sixth Amendment context, the Fifth Circuit has required that previous testimony can only be used against a criminal defendant where "(1) the witness must be shown to be unavailable to testify at the present trial and

---

[6] Rule 804(a) provides for unavailability in other circumstances that are not relevant here.

(2) the witness must have been subject to adequate cross-examination at a previous trial or hearing." Edwards, 469 F.2d at 1368. The government must demonstrate due diligence to secure the witness before the witnesses' prior testimony can be introduced. Id. at 1369.

In Edwards, the Fifth Circuit held that the government failed to satisfy the requisite standard of due diligence and good faith effort to obtain the witnesses' presence where the witnesses' whereabouts were known and they were subject to the court's subpoena power, but where the government argued that procuring the witnesses would require "excessive expense." Id. The witnesses in question were residing in another state and on a United States Army base in Germany and had previously appeared for trial twice. Id. For the third trial, the government had served the witness located in the United States with a subpoena but had not yet served the witness in Germany. Id. At the end of the second trial, which resulted in a hung jury, the court stated that it would not force the government to incur the further expense of bringing the witnesses back. Id. Apparently following these instructions, the government read the witnesses' testimony to jurors in lieu of presenting live testimony at trial, over the objection of the defendants. Id. The Fifth Circuit reversed the convictions, finding that the "right of confrontation is too significant to be balanced against the expense of transporting an otherwise available witness to the place of trial." Id. at 1369.

The corporate defendants have cited examples where courts have held that foreign seafarers were unavailable for trial and their Rule 15 deposition testimony was therefore admissible. For example, in United States v. Angelakos (Hellas) S.A., the government sought to have four crewmember witnesses deemed unavailable so that their testimony could be presented by deposition. Gov't Mtn., No. CR16-062JCC, ECF #108 (W.D. Wa. May 25, 2016). The witnesses had been served with trial subpoenas, had been advised the government would pay for airfare and lodging, and were provided contact information to arrange travel. Id. But none of the witnesses or

6

their attorneys had made contact to arrange travel. Id.  The defendants opposed, arguing that the government had not done enough—there was evidence that the witnesses did not understand the travel costs would be paid and there was no evidence of affirmative attempts to contact the witnesses. Def. Opp., United States v. Angelakos (Hellas) S.A., No. CR16-062JCC, ECF #116 (W.D. Wa. May 29, 2016). The court found the witnesses unavailable and ordered that their deposition testimony could be played at trial in lieu of live testimony. United States v. Angelakos (Hellas) S.A., No. CR16-062JCC, ECF #154 (W.D. Wa. June 6, 2016). The government has not presented any instances where deposition testimony of foreign seafarers was not admitted because they were determined to be "available" even though they were at sea.

Of note, the Rule 804 hearsay exception "does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying." Fed. R. Evid. 804(a).

2. *Quashing a Trial Subpoena*

Trial subpoenas are issued pursuant to Federal Rule of Criminal Procedure 17. Subsection (c) of the rule, which deals with producing documents and objects, provides that "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). By its terms, this exception does not appear to be applicable to a subpoena to testify. But courts have considered motions to quash or modify subpoenas to testify by reference to comparable principles. See Stern v. U.S. Dist. Ct. for Dist. of Mass., 214 F.3d 4, 17 (1st Cir. 2000) (recognizing that a subpoena survives scrutiny if the testimony sought is relevant and material because such a subpoena would not be "unreasonable or oppressive").

3. *Analysis*

The court finds that under the circumstances here, the subpoenas are unreasonable and oppressive as to witnesses Akkaya, Baliad, Cabanayan, Bernabe, and Gonzaga.[7] These five are working aboard oceangoing vessels and, as further discussed below, between visa restrictions and COVID quarantine requirements, it would be difficult—if it is possible at all—for them to leave their vessels and be replaced by qualified crewmembers. Moreover, if they leave their vessels, they will lose their long term work contracts and the associated salaries.

Empire Bulkers acts as technical manager for the vessels on which four of the witnesses are now working. It explains that to ensure the safe and efficient functioning of the vessels, each crewmember departing a vessel must be replaced on a one-for-one basis and that a disembarking crewmember must remain onboard until he can hand over his responsibilities to his replacement. It cannot hold open a position while the crewmember is not onboard or there will be insufficient coverage for watches, to provide adequate rest hours for the crew, and to perform planned and unplanned maintenance. Further, Empire Bulkers explains that there is no possibility of temporary or partial employment contracts because the collective bargaining requirements of the Philippines Overseas Employment Agency apply. Thus, any replacement crewmember would be hired for a full seven to nine month contract period. Departing crewmembers could not return to the same position until after the replacement's contract ended.

The specific logistics for each of the crew members is as follows. Baliad began working aboard the MV PANAGIOTIS as a second engineer on March 15, 2022, on a seven month contract

---

[7] As to the sixth witness, Nalogon, no evidence has been presented as to why he cannot come to trial. His counsel has not been able to make contact with him since Super Typhoon Rai hit the Philippines, nor has his manning agency. While it seems likely that he will not appear for trial, the court will not relieve him of compliance with the trial subpoena without any indication that he has a valid explanation for failing to respond to his counsel's attempts to contact him. The court certainly hopes that he is alive and well.

for $46,900. Cabanayan began working aboard the same vessel as a third engineer on the same date on an eight month contract for $24,800. The vessel is presently off the coast of Malaysia and anticipated to be there until early May. In Malaysia, the on-signing and off-signing crewmember must each have a Malaysian visa and both are subject to quarantine requirements of at least seven days. Empire Bulkers estimates the costs for replacement crew flights, quarantine accommodations, visas, and other incidentals for crew change to be at least $15,000.

Bernabe began working aboard the MV MICHALIS on January 26, 2022, as an engineer on an eight month contract for $35,200. The vessel was expected to depart Samsun, Turkey on or before the weekend of April 17, 2022, with an unknown next port of call.

Gonzaga began working as a wiper aboard the MV NORAH on March 15, 2022, on a nine month contract for $7,560. The vessel is presently in Morocco and crew changes are not permitted. The next potential port of call where a crew change could take place is at two ports in Argentina on or about May 10, 2022, or May 20, 2022. The replacement crewmember would require a recently issued Argentinian visa and according to Empire Bulkers, it takes 10-15 days to obtain one following an appointment at the Argentina Embassy in Manila. The first available appointment is May 10, 2022. They do not believe it would be possible to replace Gonzaga. They estimate the cost for replacement crew flight, quarantine accommodations, visas, and other incidentals to accomplish the crew change would be between $3,500 and $4,500.

Empire Bulkers is not the manager for the MV JOANNA, which Captain Akkaya has committed to rejoin a six month contract beginning in late April when the vessel arrives in Pireaus, Greece. But as noted above, that vessel is owned by Joanna Maritime. It reports that Akkaya will earn a salary of $52,800 during his contract. As captain, he is essential to the vessel's operation.

Joanna Maritime reports that if he does not join the vessel as scheduled, he would not be eligible for reemployment until his replacement's contract expires in late 2022 or early 2023.

The court is convinced that it would be difficult if not impossible for the Witnesses now at sea to return for trial. Moreover, the Witnesses would incur a significant hardship if they left their vessels because they could not return to their employment. The government urges the court to ignore the fact that the Witnesses were forced to stay here for almost seven months to provide grand jury testimony and Rule 15 depositions as part of these criminal proceedings. The court will not do so. The fairness of our judicial system mandates that the rights of these witnesses also be respected.

Although the court cannot now rule that their deposition testimony will be admissible at trial, the existence of the post-indictment Rule 15 depositions of four of these Witnesses[8] must also be considered. The purpose of these depositions was to preserve the testimony in case the Witnesses were not available for trial. The fact that no party sought to depose Gonzaga in October indicates his testimony was not material. The court is convinced that all material testimony has been obtained and, if the District Court allows it, can be used at trial. Under the circumstances, requiring the Witnesses working at sea to return for trial is unreasonable and oppressive. Continuing to subject them to the subpoenas could result in contempt proceedings against them upon future return to the United States if they do not now appear for trial, whatever the explanation for their failure to do so may be. There is no reason to haunt them with this specter when it is already apparent now that their inability to appear for trial is reasonable.

The government argues that Empire Bulkers and Joanna Maritime are making the witnesses unavailable. It urges this court to exercise its inherent authority to ensure that these criminal

---

[8] Deposition testimony is also available for Nalogon.

defendants do not interfere with the material witnesses by retaliating against them. The court finds no evidence of retaliation. The normal functioning of the vessels on which the Witnesses work and the regulations of the countries where the vessels will be at port are to blame for the Witnesses' unavailability. The Witnesses were not working at sea on the originally scheduled trial date in December or at the time the government moved to continue the trial in January. There is every reason to believe that the Witnesses would have come to the United States for trial had they been available to do so. The Witnesses cannot be expected to sit at home without working to support themselves and their families while waiting for some future time when this trial will be held. They already waited nearly seven months in this district and the government had ample opportunity to obtain all material testimony they could provide. They remained available to return for trial until March 2022.

The government complains that the deposition testimony would not be a sufficient substitute for the witnesses' live testimony. The court acknowledges the preference for live testimony. But trials are conducted with previously recorded testimony all the time. And unlike in the Sixth Amendment cases like Edwards, the defendants here do not object to the use of the depositions. While it will take effort to clean up the video and to present objections to the District Judge for decision, it is not impossible. And whatever hardship this may exact on the government, it pales in comparison to the hardship the Witnesses would suffer if they were forced[9] to attempt to return to this district for trial.

The court recognizes that the government has engaged in every effort to attempt to bring the Witnesses live to trial. It ensured the Witnesses were served with trial subpoenas and that they understood their obligations to comply with the subpoenas. It has vigorously opposed the

---

[9] In fact, the court has limited authority to force the Witnesses to do anything at this time. Although they are subject to the court's subpoenas, they are outside of the court's enforcement jurisdiction.

Witnesses' attempt to quash the subpoenas. It has done all it can do. And yet, the Witnesses will not be available for trial.

Conclusion

Finding it unreasonable and oppressive to require the Witnesses now at sea to return for trial, the court hereby modifies the trial subpoenas as follows:  Witnesses Haldun Akkaya, Manuel Baliad II, Bienvenido Cabanayan Jr.,  Gerone Bernabe, and Louie Gonzaga shall not be required to return for trial of this matter for the duration of their present employment contracts or while they are employed on any other long term contracts to work at sea. To the extent they cease being employed aboard an oceangoing vessel, the subpoenas will remain valid. As to Nimuel Nalogon, the court has no evidence of why it would be unreasonable or oppressive to subject him to the subpoena. As such, he remains bound by the subpoena; however, the court's ruling as to Nalogon is without prejudice to being re-examined if evidence of his whereabouts become known.

New Orleans, Louisiana, this 28th day of April, 2022.

Janis van Meerveld<br>
United States Magistrate Judge